1  **WO**

2

3

4

5

6  # IN THE UNITED STATES DISTRICT COURT

7  ## FOR THE DISTRICT OF ARIZONA

8

9  Penny Petty, et al.,                           No. CV-15-01338-PHX-DLR

10                        Plaintiffs,              **ORDER**

11  v.

12  Arizona, State of, et al.,

13                        Defendants.

14

15        Before the Court is Defendants' State of Arizona, Arizona Department of

16  Corrections ("ADOC"), Janice K. Brewer, Charles L. Ryan, and Christopher Moody's

17  Motion to Dismiss Plaintiffs' First Amended Complaint.  (Doc. 17.)  The motion is fully

18  briefed.[1]  For the following reasons, Defendants' motion is granted in part.

19                        <u>**BACKGROUND**</u>

20        In April 1988, Gordon Emil Lee began his sentence with the ADOC at ASPC-

21  Lewis.  (Doc. 9, ¶ 13.)  Lee began his term in protective custody, segregated from the

22  general prison population, and remained there for more than two decades.  (*Id.*, ¶¶ 14-15.)

23  Thereafter, Defendants removed Lee from protective custody and placed him in the

24  general prison population, where he was repeatedly and violently assaulted by other

25  inmates.  (*Id.*, ¶ 16.)  As a result, Lee requested to be returned to protective custody

26  several times.  (*Id.*, ¶ 17.)  Charles Ryan, Director of the ADOC, and Christopher Moody,

27
_____

28        [1] Plaintiffs' request for oral argument is denied.  The issues are fully briefed, and the Court finds oral argument will not aid in the resolution of this matter.  *See* LR Civ. 7.2(f); Fed. R. Civ. P. 78(b).

Warden of ASPC-Lewis, allegedly refused to take action to protect Lee and refused to place him back in segregation.  (*Id.*, ¶ 18.)

On July 4, 2015, Lee was attacked by several inmates and strangled to death.  (*Id.*, ¶¶ 20-21.)   During the attack, the ASPC-Lewis staff were allegedly "inattentive or distracted from duty . . . ; slept through the attack; and/or failed to conduct an inmate count or inspection[.]"  (*Id.*, ¶ 21.)

Penny Petty, the personal representative for the Estate of Gordon Emil Lee, as well as Lee's surviving children, Shenison Lee and Kyle Lee, filed this suit against the State of Arizona, former Arizona Governor Janice Brewer, ADOC Director Charles Ryan, and Warden of ASPC-Lewis Christopher Moody.  (*Id.*)  In Counts I-IV, Plaintiffs bring claims for negligence, negligence per se, negligent training and supervision, and wrongful death.  (*Id.*, ¶¶ 25-42.)  In Count V, Plaintiffs seek damages under 42 U.S.C. § 1983 arising from Defendants' deliberate indifference to Lee's safety, which resulted in his death.  (*Id.*, ¶¶ 43-44.)  Defendants collectively move to dismiss the First Amended Complaint.

## LEGAL STANDARD

To survive dismissal for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must contain more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action"; it must contain factual allegations sufficient to "raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Although "a complaint need not contain detailed factual allegations . . . it must plead 'enough facts to state a claim to relief that is plausible on its face.'"  *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts

that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"  *Id.* (internal citations omitted) (quoting *Twombly*, 550 U.S. at 557).

When analyzing a complaint for failure to state a claim under Rule 12(b)(6), "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Smith v. Jackson*, 84 F.3d 1213, 1217 (9th Cir. 1996).  However, legal conclusions couched as factual allegations are not given a presumption of truthfulness, and "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

## ANALYSIS

**I.  Count One – Negligence, Count Three – Negligent Training and Supervision, Count Four – Wrongful Death**

Defendants argue that under A.R.S. § 31-201.01(F), Plaintiffs' claims can run only against the state, and that under A.R.S. § 12-820.02(A)(4), the individual Defendants are entitled to qualified immunity for their conduct unless they were grossly negligent. Defendants also point out that Plaintiffs have sued them in their official capacities, not their individual capacities.  Plaintiffs argue that these statutes do not apply because they allege that Defendants acted outside the scope of their legal duty and employment.  (Doc. 19 at 16.)

Under Arizona law, a public employee is not liable for an injury caused by one prisoner to another prisoner unless the employee "acting within the scope of the public employee's employment intended to cause injury or was grossly negligent." A.R.S. § 12-820.02(A)(4).  Further, "[a]ny and all causes of action which may arise out of tort caused by the director, prison officers or employees of the department, within the scope of their legal duty, shall run only against the state." A.R.S. § 31-201.01(F).  Both statutes protect state employees for conduct within the scope of their employment or legal duty.

"Conduct falls within the scope [of employment] if it is the kind the employee is

employed to perform, it occurs within the authorized time and space limits, and furthers the employer's business even if the employer has expressly forbidden it." *Baker ex rel. Hall Brake Supply, Inc. v. Stewart Title & Trust of Phx., Inc.*, 5 P.3d 249, 254 (Ariz. Ct. App. 2000). Whether an employee is acting within the scope of his employment is a question of fact. *Smith v. Am. Exp. Travel Related Servs. Co., Inc.*, 876 P.2d 1166, 1171 (Ariz. Ct. App. 1994). Thus, Plaintiffs only need to allege facts that, if taken as true, would support a reasonable inference that the employees were not acting within the scope of their employment or legal duty when the allegedly wrongful conduct occurred. *See Iqbal*, 556 U.S. at 678.

Here, Plaintiffs' allegations give rise to the inference that Defendants acted outside the scope of their employment when Lee was fatally assaulted. They allege that Defendants "slept through the attack" and "failed to conduct an inmate count or inspection" on the night of Lee's death. (*Id.*, ¶ 21.) Although Plaintiffs allege Defendants' actions occurred within the time and space limits of employment, Defendants were "not employed to perform" the "type of conduct" Plaintiffs allege – sleeping on duty. Assuming the truth of these allegations, as the Court must, A.R.S. § 31-201.01(F) and § 12-820.02(A) do not bar Plaintiffs' claims. *See Motelewski v. Maui Police Dept.*, CV. No. 11-00778BMK, 2012 WL 3780188, at *4 (D. Haw. Aug. 30, 2012) (finding that a police officer was acting outside of the scope of his employment when he committed a sexual assault while on duty because he was "not employed to perform this type of conduct and it was not actuated . . . to serve the employer").

However, as Defendants point out, Plaintiffs have sued the individual Defendants only in their official capacities. This undermines their allegations that Defendants were acting outside the scope of their employment. As such, the Court will dismiss counts one, three, and four without prejudice, but will provide Plaintiffs the opportunity to amend their first amended complaint.[2]

---

[2] Plaintiffs requested leave to amend in their response brief. (Doc. 19 at 17.) Defendants do not object. (Doc. 20 at 9.)

**II.  Count Two – Negligence Per Se**

Defendants argue that Plaintiffs have failed to state a claim of negligence per se. They argue that the statutes and policies cited by Plaintiffs cannot form the basis of a negligence per se claim because they were not enacted for safety purposes and do not proscribe specific behavior.  Plaintiffs did not respond to Defendants' arguments on this issue and appear to have abandoned this claim.  Even if Plaintiffs did not abandon this claim, it fails.

Under Arizona law, "negligence per se applies when a person violates a specific legal requirement." *Reyes v. Frank's Serv. & Trucking, LLC*, 334 P.3d 1264, 1271 (Ariz. Ct. App. 2014).  Negligence per se requires the violation of a statute created for safety purposes that proscribes or defines specific acts.  *Griffith v. Valley of Sun Recovery & Adjustment Bureau, Inc.*, 613 P.2d 1283, 1284-85 (Ariz. Ct. App. 1980).  Whether violation of a specific statute is negligence per se is a question of law.  *See Orlando v. Northcutt*, 441 P.2d 58, 60 (Ariz. 1968).

**A.  Violation of Arizona Statutes**

Plaintiffs claim Defendants "violated provisions of A.R.S. § 31-122, 31-127, 31-201, 31-201.01, and others" by failing to remain awake, monitor the interactions and conditions of ASPC-Lewis, and respond to previous reported inmate attacks.  (Doc. 9, ¶ 33.)  But none of the statutes listed by Plaintiffs proscribe *specific* conduct or define *specific* prohibited acts.  *See* A.R.S. § 31-122 (statute entitled "Receiving and Keeping Federal Prisoners" provides: "A sheriff to whose custody a prisoner is so committed is answerable in the courts of the United States, for the safekeeping of the prisoner, according to the laws thereof"); A.R.S. § 31-127 ("A public officer who with criminal negligence is guilty of inhumanity or oppression toward a prisoner under his care or in his custody is guilty of a class 2 misdemeanor."); A.R.S. § 31-201 (statute entitled "Definitions," which only defines the terms "Department" and "Director"); A.R.S. § 31-201.01 (listing a set of duties of the director of the ADOC without defining or proscribing

specific acts ).[3]  Accordingly, as a matter of law, the statutes cited in Plaintiffs' complaint do not provide the basis for a claim of negligence per se.

### B.  Violation of ADOC Policies

Plaintiffs allege Defendants failed to "adhere to, implement, and enforce the provisions of Department of Corrections Departmental Orders 801, 805, and 806 . . . and failed to heed ADOC Director's instructions, (including Instruction No. 326)" by failing to remain awake, monitor the interactions and conditions of ASPC-Lewis, and respond to previous reported inmate attacks.  (Doc. 9, ¶ 34.)  Defendants argue that even if these orders proscribe certain conduct, a violation of an internal policy is not negligence per se.

Under Arizona law, an employer's policies and procedures, even if adopted for safety reasons, do not constitute negligence per se.  *Bryan v. S. Pac. Co.*, 286 P.2d 761, 765 (Ariz. 1955).  Instead, it is an additional consideration in determining the defendants' negligence.  *Id.* ("In our opinion the rules of an employer adopted for the safe operation of its business have probative value in establishing whether a defendant-employer realized or should have realized that his conduct involved an unreasonable risk of injury.").  "While violation of such a rule would not constitute negligence per se, it would be a circumstance for the jury to consider on the issue of respondent's negligence."  *Id.* (internal quotation marks omitted).

Here, the ADOC Orders 801, 805, and 806 are internal policies and procedures of ADOC and are equivalent to the "employer adopted rule[s]" in *Bryan*.  Plaintiffs cite no authority in support of their argument that ADOC policies may form the basis of a claim of negligence per se, and at least one judge in this Court has ruled that they do not, *see Porter v. Arizona Dept. of Corrections*, No. 2:09-cv-2479-HRH, 2012 WL 7180482, at *4 (D. Ariz. Sept. 17, 2012) (holding that the ADOC order 509.02.1.1 could not establish negligence per se because it was an internal policy and procedure).  Accordingly, count two is dismissed.

---

[3] A.R.S. § 31-201.01 is the only statute cited by Plaintiffs that comes close to proscribing specific acts.  But, as noted above, Plaintiffs failed to respond to Defendants' argument and failed to specify which provision of the statute Defendants violated.

**III.  Count Five – Violation of 42 U.S.C. § 1983**

Defendants argue that Plaintiffs fail to allege personal participation in the alleged constitutional violations by the individual Defendants.  They assert that § 1983 liability cannot be based on mere supervisory authority, and therefore Defendants Moody and Ryan should be dismissed.[4]

"To state a claim under § 1983, a plaintiff must allege two essential elements:  (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of State law." *Long v. Cty. of L.A.*, 442 F.3d 1178, 1185 (9th Cir. 2006).  "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.  "A showing that a supervisor acted, or failed to act, in a manner that was deliberately indifferent to an inmate's Eighth Amendment rights is sufficient to demonstrate the involvement – and the liability – of that supervisor."  *Starr v. Baca*, 652 F.3d 1202, 1206-07 (9th Cir. 2011).  An Eighth Amendment violation may be established by demonstrating that prison officials were deliberately indifferent to threats of an inmate's health or safety.  *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

In *Farmer*, a preoperative transsexual male prisoner brought a *Bivens* complaint against prison officials alleging they violated the Eighth Amendment by showing a "deliberate indifference" for his health and safety.  *Id.* at 825.  The prisoner claimed prison officials knew he was vulnerable to attack by prisoners in the general population because he was a transsexual.  *Id.* at 829.  The prison officials placed the prisoner in segregation on at least one occasion because of safety concerns.  *Id.* at 830.  After being placed in general population, the prisoner was physically and sexually assaulted.  *Id.* The Court held that prison officials may be liable for violating the Eighth Amendment if they know an "inmate face[s] a substantial risk of serious harm and disregard[] that risk by

---

[4] To the extent Plaintiffs allege their § 1983 against Arizona and ADOC, the Court dismisses both Arizona and ADOC from count five because they are not "persons" under § 1983.  (Doc. 17 at 9; Doc. 19 at 8.)

failing to take reasonable measures to abate it." *Id.* at 847.

Like *Farmer*, Plaintiffs allege that Moody and Ryan were aware of the "prior incidents of inter-inmate hostility and violence." (Doc. 9, ¶ 47.) Further, like the prisoner in *Farmer*, who was held in segregation due to his vulnerability, Lee was held in protective custody away from the general population for more than two decades. (*Id.* at ¶¶ 14-15.) Then as a result of internal practice, Lee was moved to the general population where he was "targeted for repeated and aggravated violent assault by other inmates." (*Id.*, ¶ 16.) Lee made multiple requests to be allowed to return to protective custody, but Ryan and/or Moody refused the requests. (*Id.*, ¶¶ 17, 19.) Taking the facts alleged as true, it is reasonable to infer that Moody and Ryan knew that Lee was vulnerable to attack and did nothing to prevent it. Accordingly, the Court finds that the Plaintiffs have alleged facts sufficient to support a § 1983 claim against Defendants Moody and Ryan.

However, count five will be dismissed against Ryan and Moody without prejudice because Plaintiffs sued them in their official capacities. "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. As such, Plaintiffs may amend their complaint appropriately.

## ORDER TO SHOW CAUSE

Defendants note that Defendant Janice Brewer has not been served in this action. (Doc. 17 at 1 n.1.) Consequently, within 7 days of the date of this Order, Plaintiffs are ordered to show cause why Defendant Janice Brewer should not be dismissed for lack of service.

**IT IS ORDERED** that

1.      Defendants' Motion to Dismiss First Amended Complaint, (Doc. 17), is **GRANTED** and Plaintiffs' first amended complaint is **DISMISSED WITHOUT PREJUDICE**.

2.      Plaintiffs may file a second amended complaint within 7 days of entry of this Order.

3.     Plaintiffs are ordered to show cause within 7 days of the date of entry of this Order why Defendant Janice Brewer should not be dismissed for lack of service.  Should Plaintiffs fail to respond, the Clerk is directed to dismiss Defendant Brewer without further order of the Court.

Dated this 7th day of December, 2015.

Douglas L. Rayes
United States District Judge