**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Penny Petty, et al., | No. CV-15-01338-PHX-DLR |
| Plaintiffs, | **ORDER** |
| v. | |
| State of Arizona, et al., | |
| Defendants. | |

On July 4, 2014, prisoner Gordon Emil Lee was murdered by his fellow inmates. Lee's Estate, through Personal Representative Penny Petty, and his two surviving sons, Shenison and Kyle Lee (collectively "Plaintiffs") bring this action against the State of Arizona and various prison officials. Plaintiffs allege that the State and Correctional Officers Fernando Herrera and Raymond Cedillos caused Lee's death through gross negligence. Plaintiffs also allege that Warden Chris Moody, Deputy Warden Burgess, Security Operations Officer Keith Smith, Correctional Lieutenant Swirsky, Herrera, and Cedillos violated Lee's Eighth and Fourteenth Amendment rights by failing to protect him from harm by other inmates. Before the Court is Defendants' motion for summary judgment on all claims, which is fully briefed. (Docs. 116, 126, 132.) The motion is fully briefed. For the following reasons, Defendants' motion is granted.[1]

---

[1] Plaintiffs' request for oral argument is denied because oral argument will not aid the Court in the resolution of this matter. *See* LRCiv 7.2(f); Fed. R. Civ. P. 78(b).

**SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate when there is no genuine dispute as to any material fact and, viewing those facts in a light most favorable to the nonmoving party, the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Summary judgment may also be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material if it might affect the outcome of the case, and a dispute is genuine if a reasonable jury could find for the nonmoving party based on the competing evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. The burden then shifts to the non-movant to establish the existence of a genuine and material factual dispute. *Id.* at 324. The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts," and instead "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (internal quotation and citation omitted). Conclusory allegations, unsupported by factual material, are insufficient to defeat summary judgment. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

In addition to these general principles, this District's Local Rules of Practice impose specific requirements on the form and content of summary judgment motions. "Any party filing a motion for summary judgment must file a statement, separate from the motion and memorandum of law, setting forth each material fact on which the party relies in support of the motion." LRCiv 56.1(a). Each of these facts "must refer to a specific admissible portion of the record where the fact finds support (for example, affidavit, deposition, discovery response, etc.)." *Id.* Likewise:

> Any party opposing a motion for summary judgment must file a statement, separate from that party's memorandum of law, setting forth: (1) for each paragraph of the moving party's separate statement of facts, a correspondingly numbered paragraph indicating whether the party disputes the statement of fact set forth in that paragraph and a reference to the specific admissible portion of the record supporting the party's position if the fact is disputed; and (2) any additional facts that establish a genuine issue of material fact or otherwise preclude judgment in favor of the moving party. Each additional fact must be set forth in a separately numbered paragraph and must refer to a specific admissible portion of the record where the fact finds support.

LRCiv 56.1(b). The rule distinguishes between a separate statement of facts and a memorandum of law because the two documents serve different purposes. The court should be able to glean which facts, if any, are genuinely disputed by reviewing the parties' separate and controverting statements of facts. Working from that baseline of facts, the court then looks to the parties' memoranda of law to determine whether any genuinely disputed matters are material under governing law, or whether the movant is entitled to judgment as a matter of law. Thus, factual disputes should be aired in the parties' separate statements, while legal disputes should be addressed in their memoranda of law. The court may deem a movant's separate statement of facts to be true if the non-movant does not comply with these rules. *See Szaley v. Pima Cty.*, 371 Fed. App'x 734, 735 (9th Cir. 2010).

Here, Defendants submitted a separate statement of facts setting forth each material fact upon which they rely. (Doc. 117.) Each paragraph cites to specific evidence in the record against which no admissibility objections have been raised. In response, Plaintiffs submitted a controverting statement of facts that fails to put forth correspondingly numbered paragraphs, indicate whether facts asserted by Defendants are disputed or admitted, or cite to admissible portions of the record. (Doc. 127.) Plaintiffs' separate controverting statement of facts amounts to no more than a disorganized list of evidence and largely is unhelpful. Because Plaintiffs' controverting statement of facts is entirely out of compliance with LRCiv 56.1(b)(1), the Court deems admitted the facts set

forth by Defendants for purposes of this order.[2]

## BACKGROUND

In 1988, Lee was sentenced to 75 years in an Arizona state prison. (Doc. 117 ¶¶ 1-2.) Lee initially was placed in a close custody sex offender unit because of his sex-related crimes. (¶ 5.) In 1998, Lee requested to be housed in a protective custody unit. (¶ 95.) When an inmate is given protective custody, they are housed only with other protective custody inmates. (¶ 83.) Lee's request was granted, and he was moved into protective custody. (¶¶ 59-60, 97-98.) At the time of his death, Lee was housed at the Arizona State Prison Complex-Lewis ("ASPC-Lewis"), Bachman unit ("Bachman"), which is a protective custody unit. (¶ 99.)

On June 25, 2014, there was a fight in Bachman between inmates Swan and Burns. (¶¶ 11-12.) Bachman Shift Commander Swirsky interviewed Swan, the suspected instigator of the altercation, and determined that the fight began as an attempt to stop harassment within the unit. (¶¶ 7, 12, 16, 19-20.) At no time during the interview did Swan mention Lee. (*Id.*) Although Lee was not directly involved in the altercation, he suffered superficial injuries that required medical treatment. (Doc. 117 ¶¶ 11, 12, 18, 69, 71; Doc. 117-1 at 13, 28.) At no time subsequent to the June 25 altercation, but prior to Lee's murder, did Lee complain of being harassed, report that he was in danger of being assaulted, or request to be moved from Bachman Unit. (¶¶ 19, 100.)

In the early morning hours of July 4, 2014, Lee was murdered by other inmates in Bachman.

## DISCUSSION

Plaintiffs assert three claims: (1) gross negligence against the State, Herrera, and Cedillos; (2) violation of 42 U.S.C. § 1983 against Herrera, Cedillos, and Swirsky, alleging that each deprived Lee of his Eighth and Fourteenth Amendment rights; and (3) violation of § 1983 against Moody, Burgess, and Smith based on allegations that these

---
[2] Plaintiffs' response memorandum also violates LRCiv 7.1(b) by presenting footnotes in a font size smaller than 13 point, and presenting headers in unusually large and oddly spaced typeface. Plaintiffs' counsel is strongly encouraged to review this District's Local Rules of Practice to ensure that future filings comply.

- 4 -

supervisors knew of the constitutional violations of their subordinates yet failed to act to prevent them.

**I. Gross Negligence**

To prove gross negligence, a plaintiff must demonstrate that the defendant "acted or failed to act when it knew or had reason to know facts which would lead a reasonable person to realize that its conduct not only created an unreasonable risk of bodily harm to others but also involve a high probability that substantial harm would result." *Harrelson v. Dupnik*, 970 F. Supp. 2d 953, 975 (D. Ariz. 2013). The risk "must be substantially greater than the risk involved in ordinary negligence." *Rourke v. State*, 821 P.2d 273, 281 (Ariz. Ct. App. 1991); *see also Kemp v. Pinal Cty.*, 474 P.2d 840, 843-44 (Ariz. Ct. App. 1970) (Gross negligence "is different from ordinary negligence in quality and not degree. A person can be very negligent and still not be guilty of gross negligence."). In Arizona, "gross negligence is generally a question of fact that is determined by a jury. The court may resolve this issue as a matter of law, however, if the plaintiff fails to produce evidence that is 'more than slight and that does not border on conjecture' such that a reasonable trier of fact could find gross negligence." *Porter v. Ariz. Dep't of Corr.*, No.2:09-CV-2479-HRH, 2011 WL 13047303, at *6 (D. Ariz. Dec. 6, 2011).

Plaintiffs' gross negligence claim is premised on four main allegations: (1) Lee was wrongfully removed from protective custody; (2) Lee's unit was inadequately staffed on the night of his murder; (3) Herrera and Cedillos fell asleep on the night of Lee's murder; and (4) Lee was at risk of being attacked, and prison officials either knew or should have known this given the June 25, 2014 altercation in Bachman. (Doc. 85 ¶¶17-21, 23, 27, 34, 35.) Defendants contend that Plaintiffs cannot meet their burden for two reasons.

First, Defendants argue that Plaintiffs cannot establish a breach of the standard of care, specifically as it relates to appropriate staffing levels and inmate risk assessment, without an expert opinion. (Doc. 116 at 5-11.) This is a point on which Plaintiffs evidently agree. Plaintiffs retained Executive Chief Deputy Raul Banasco as an expert to

opine on such matters. Defendants moved to preclude the use of Banasco as an expert on inadequate disclosure grounds, and in opposing Defendants' motion Plaintiffs argued that "[d]ue to the complexity of the issues involved in this case the use and need of an expert witness is essential[.]" (Doc. 103 at 2.) Yet, despite Plaintiffs' recognition that expert witness testimony is essential to their case, they failed to submit or cite to an expert opinion on the standard of care in their opposition to Defendants' summary judgment motion. (Docs. 126, 127.) When, and under what circumstances, an inmate should be placed in protective custody, what is appropriate and necessary prison staffing, and what activities should place prison authorities on notice that an inmate is at risk of being assaulted and what should be done to protect a prisoner in such a situation are outside the common knowledge and experience of ordinary persons. When the question of conduct necessary to meet the applicable standard of care of a profession or industry is outside the common knowledge of ordinary persons, the plaintiff must present evidence of the standard of care through an expert witness. *See, e.g.*, *Porter v. Ariz. Dep't of Corr.*, No. 09-CV-2479-HRH, 2012 WL 7180482, at *4 (D. Ariz. Sept. 17, 2012) (finding that the standard of care for a corrections officer acting within his professional capacity is beyond the common knowledge of ordinary people and requires expert testimony on the standard of care).

The Court is not required to search the entire record for evidence establishing a genuine issue of material fact or to obtain missing materials. *See Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1028-29 (9th Cir. 2001); *Forsberg v. Pac. N.W. Bell Tel. Co.*, 840 F.2d 1409, 1417-18 (9th Cir. 1988). "As the Seventh Circuit observed in its now familiar maxim, 'judges are not like pigs, hunting for truffles buried in briefs.'" *Indep. Towers of Wash v. Wash.*, 350 F.3d 925, 929 (9th Cir. 2003) (quoting *U.S. v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)). The Court nevertheless went rooting through the docket and discovered that Plaintiffs previously submitted Banasco's report as part of their response to Defendants' motion to preclude. (Docs. 102, 103.) The report, however, is vague, conclusory, and fails to establish the relevant standard of care. Accordingly,

Banasco's report would not have established a genuine issue of material fact even if it had been properly cited in Plaintiffs' opposition to the present motion.

Second, Defendants contend that Plaintiffs' allegations of gross negligence are not supported by facts. The Court agrees.

It is undisputed that Lee continuously was housed in protective custody from 1998 through the date of his murder. (Doc. 117 ¶¶ 59-60, 95.) Plaintiffs have not disputed this fact with citation to contrary admissible evidence. In an effort to create a factual dispute, Plaintiffs cite to an allegation contained within their Fourth Amended Complaint. (Doc. 126 at 15.) At summary judgment, however, the Court considers evidence not allegations, and Plaintiffs' Fourth Amended Complaint cannot serve as an affidavit because it is not verified or based on Plaintiffs' personal knowledge of Lee's security status. *Schroeder v. McDonald*, 55 F.3d 454, 460 (9th Cir. 1995). Moreover, the Fourth Amendment Complaint is not the operative complaint in this matter.

It also is undisputed that Herrera and Cedillos did not fall asleep while on duty at the time of Lee's murder.[3] (Doc. 117 ¶¶ 26, 35, 51.) Plaintiffs have not disputed this fact with citation to contrary admissible evidence. Moreover, even assuming the officers were asleep, merely falling asleep on duty does not amount to gross negligence. *See e.g.*, *Vaughns v. City of N.Y.*, 17-CV-3448 (JGK), 2018 WL 1325758, at *2 (S.D. N.Y. Mar. 13, 2018) (granting motion to dismiss and finding allegation that officers failed to protect an inmate from other inmates because they were asleep "amounts to no more than . . . negligence); *Breland v. Abate*, 917 F. Supp. 220, 222 (S.D. N.Y. 1996) (denying deliberate indifference claim under the Fourteenth Amendment because the plaintiff's

---

[3] For purposes of this order, the Court assumes, without deciding, that individual liability could attach to Herrera and Cedillos. As Defendants correctly note, under Arizona law a public employee is not liable for an injury caused by one prisoner to another prisoner unless the employee "acting within the scope of the public employee's employment intended to cause injury or was grossly negligent." A.R.S. § 12-820.02(A)(4). Further, "[a]ny and all causes of action which may arise out of tort caused by the director, prison officer or employees of the department, within the scope of their legal duty, shall run *only against the state*." A.R.S. § 31-201.01(F) (emphasis added). It seems, then, that Plaintiffs' gross negligence claim runs only against the State and not against the individual prison officials. The Court need not resolve this issue, however, because no reasonable jury could conclude that Herrera and Cedillos were grossly negligent.

allegations that the prison official was asleep when a fight broke out among fellow inmates stated "no more than mere negligence").

Finally, even assuming that Plaintiffs' allegations regarding inadequate staffing and failure to properly assess Lee's risk of harm do not require the support of an expert opinion, these allegations lack factual support. Bachman was adequately staffed on the night of Lee's murder. (Doc. 117 ¶¶ 22, 63.) Plaintiffs have not disputed this fact with citation to contrary admissible evidence. Nor is there sufficient evidence for a jury to find that prison officials should have known Lee was at risk of harm. Lee was not directly involved in the June 25 altercation, and the injuries he suffered as a bystander were superficial. Nothing about these circumstances suggested that Lee was in any danger above and beyond the normal perils of prison. *See Fallas v. Nesbitt*, 966 F.2d 375, 380 (8th Cir. 1992) ("Prisons are, by the very nature of many of those persons housed within their walls, dangerous, violent, and oftentimes unpredictable."). In fact, in the week after the June 25 incident, Lee never requested to be removed from Bachman, advised prison officials that he was being harassed, or reported that he was in danger. Viewing this evidence in the light most favorable to Plaintiffs, no reasonable jury could find Defendants were grossly negligent. Defendants therefore are entitled to summary judgment on Plaintiffs' gross negligence claim.

**II. § 1983 Claims Against Swirsky, Herrera, and Cedillos**

Section 1983 provides a cause of action for persons who have been deprived of their constitutional rights by persons acting under color of law. It is a mechanism "for vindicating federal rights elsewhere conferred," and "is not itself a source of substantive rights." *Thornton v. City of St. Helens*, 425 F.3d 1158, 1164 (9th Cir. 2005) (internal quotations omitted). To succeed on a claim under § 1983, a plaintiff must show "(1) that a right secured by the Constitution or the laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under color of State law." *Long v. Cty. of L.A.*, 442 F.3d 1178, 1185 (9th Cir. 2006). Defendants concede that the second element is satisfied, but argue that Plaintiffs cannot establish the first.

"[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993). In its prohibition of "cruel and unusual punishments," the Eighth Amendment imposes duties on prison officials to, among other things, "take reasonable measures to guarantee the safety of the inmates." *Hudson v. Palmer,* 468 U.S. 517, 526-527 (1984). In particular, "prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). Where a prisoner alleges injuries stemming from prison officials failure to prevent harm, the officials may be held liable only if they acted with "deliberate indifference to a substantial risk of serious harm." *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998). Although the deliberate indifference standard involves an objective and a subjective prong, Defendants challenge only Plaintiffs ability to demonstrate the subjective prong. (Doc. 116 at 19.)

The subjective prong requires a plaintiff to demonstrate that the prison official acted with a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 837. It must be shown that the "official kn[ew] of and disregard[ed] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. Mere negligence is insufficient to establish liability; the official's conduct must have been wanton. *Id.* at 835. Prison officials may avoid liability by presenting evidence that they lacked knowledge of the risk, or by presenting evidence of a reasonable, albeit unsuccessful, response to the risk. *Id.* at 844-45. When analyzing a defendant's liability for deliberate indifference, the inquiry "must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988).

Plaintiffs allege that Herrera and Cedillos acted with deliberate indifference because they failed to prevent Lee's murder, even though they were instructed to be more

vigilant in their supervision because some inmates were being harassed by others. Specifically, Plaintiffs allege that Herrera and Cedillos fell asleep on the night of the murder and failed to complete their security checks as assigned. (Doc. 126 at 19.) Defendants, however, have offered evidence that Herrera and Cedillos did not fall asleep while on duty or fail to complete their security checks. (Doc. 117 ¶¶ 32, 34, 35, 43-44, 46-47, 51.) Plaintiffs failed to controvert these facts with citation to admissible evidence.

Plaintiffs also allege that Swirsky knew that correctional officers were falling asleep and not completing security checks, and that he failed to properly investigate Lee's involvement in the June 25 altercation. (Doc. 126 at 20-21.) These allegations lack factual support. As noted, Defendants offered unrebutted evidence that Herrera and Cedillos did not fall asleep or fail to complete security checks. Plaintiffs cite no evidence that Swirsky had contrary knowledge. (Doc. 117 ¶¶ 26-27.)

Moreover, Defendants' unrebutted facts show that Swirsky had no reason to interview Lee prior to his murder. Plaintiffs highlight that, in investigating the June 25 incident, Captain O'Brien might have been advised by an inmate to speak with Lee about the fight. (¶¶ 13-14, 16-17.) But Swirsky did not learn this until after Lee's death. (¶¶ 13-14.) Plaintiffs' argument also assumes that an interview with Lee would have led to discovery of the substantial risks he faced. This inference, however, is unwarranted given that at no time between the June 25 incident and his death did Lee inform Swirsky or any other prison official that he was being harassed, felt threatened, or was in danger. (¶¶ 19, 61-62, 75-76, 100, 104.) Nor did Swirsky obtain any information from his interview with the perpetrator of the June 25 incident that reasonably would have led him to believe Lee was in danger. (¶ 12.)

Lastly, Swirsky advised his staff that some inmates were being harassed, and instructed them to be in constant motion and to report suspicious activity. (¶ 31.) These actions undermine Plaintiffs' contention that Swirsky was deliberately indifferent to the risks of such inmate-on-inmate violence. For all of these reasons, Swirsky, Herrera, and Cedillos are entitled to summary judgment on Plaintiffs' § 1983 claims against them.

**III. § 1983 Claims Against Moody, Burgess, and Smith**

Under § 1983, "[a] supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor*, 880 F.2d at 1045. There is no respondeat superior liability under § 1983. *Id.*

Plaintiffs concede that they "do not allege any personal participation of [Moody, Burgess, or Smith] in the events leading up to Lee's death." (Doc. 126 at 14.) Instead, Plaintiffs allege that Moody, Burgess, and Smith knew of the risks to Lee, but failed to properly protect him. Plaintiffs argue that these three defendants knew Bachman was improperly staffed, that active duty officers routinely slept during their shifts, and that officers failed to properly conduct their security checks while on duty. (Doc. 126 at 14-16.)

As thoroughly discussed above, these allegations lack factual support. Defendants offered evidence disproving these allegations, and Plaintiffs failed to rebut Defendants' facts with citation to admissible evidence. Furthermore, it is undisputed that Moody was never given information about Lee, and was unaware of any requests for Lee to be removed from Bachman.[4] (Doc. 117 ¶¶ 61-62, 66.) Likewise, there is no evidence that Burgess and Smith knew about any risks to Lee's safety. Plaintiffs also cite no evidence that these defendants had reason to suspect that corrections officers from Bachman were not faithfully carrying out their duties. (¶ 65.) Moody, Burgess, and Smith therefore are entitled to summary judgment on the §1983 claims against them.

//

//

---

[4] Plaintiffs argue that "[t]his Court previously found that Plaintiffs had alleged sufficient facts to infer that Defendant Moody knew that [Lee] 'was vulnerable to attack and did nothing to prevent it.'" (Doc. 126 at 15.) Plaintiffs' argument reflects a fundamental misunderstanding of the difference between pleading a plausible claim to relief and supporting those claims at the summary judgment stage with admissible evidence justifying a trial. *Compare* Fed. R. Civ. P. 8 *and Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007),*with* Fed. R. Civ. P. 56 *and Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248. Though Plaintiffs previously pled allegations plausibly stating a claim to relief, they have utterly failed to support those allegations with admissible evidence.

**IT IS ORDERED** that Defendants' motion for summary judgment (Doc. 116) is **GRANTED**. The Clerk shall enter judgment accordingly and terminate this case.

Dated this 15th day of May, 2018.

Douglas L. Rayes
United States District Judge